BRIAN D. LYNCH
United States Bankruptcy Judge
1717 Pacific Ave, Suite 2155
Tacoma, WA 98402

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

In re:

ROBBYN D. MATTSON and
RENEE D. MATTSON,

Debtors.

No. 10-50455-BDL

**MEMORANDUM DECISION ON
DEBTORS' MOTION TO MODIFY**

Debtors Robbyn and Renee Mattson's Motion to Modify their Amended Plan under 11 U.S.C. §1329 [dkt #30] came before the Court for hearing on July 5, 2011. The Chapter 13 Standing Trustee, David Howe, objected to Debtors' motion. The parties stipulated that Debtors' original schedules and plan, filed December 21, 2010 with their petition for relief [dkt #1], their Statement of Current Monthly and Disposable Income (Form B22C) [dkt #5], and their Amended Schedules I and J and proposed Amended Plan, filed June 15, 2011 [dkt #28 and 29] constituted the record for purposes of this motion.

The Court, having reviewed the record in this case, the initial motion, Trustee's objection and Debtors' reply, and having heard the arguments of counsel at the hearing, makes the following findings of fact and conclusions of law, pursuant to Fed. R. Bankr. P. 7052.

I. **Factual and Procedural History**

MEMORANDUM DECISION ON MOTION TO MODIFY- 1

Debtors filed their petition for Chapter 13 relief on December 21, 2010. Their schedules listed assets including a house, four vehicles, various funds in bank accounts, personal and household furnishings and over $83,000 in a retirement account, most of which were exempted. Debtors' Schedule F listed $163,367 in unsecured debt.

Debtors' Schedule I listed both Debtors as employed by the Camas School District. Ms. Mattson is a teacher, earning an average of $3,067 per month; Mr. Mattson was listed as a "substitute janitor" from which he had no earnings yet per month and also showed an average $1,200 per month from operation of a business.[1] Debtors' combined average monthly income totaled $4,267 per month. Debtors' Schedule J reflected expenses of $4,117 per month, leaving a monthly net income of $150 per month. There are no children in the home.

Debtors' Form B22C indicated they are above-median debtors and reflected a projected disposable income of $253 per month, although the Form B22C went on to note that it didn't accurately reflect Debtors' projected income because it reflected the income from Mr. Mattson's previous job and his seasonal income. Looking to the prior six-month period, Debtors argued, showed a substantially higher amount than their average income would be going forward, given Mr. Mattson's lower income from the new job and the unavailability of the seasonal income.

Debtors filed a Chapter 13 Plan [docket #2] along with their petition, which proposed a $150 per month payment for a 60 month plan duration, for total payments of $9,000. The only

---

[1] Schedule I stated that Mr. Mattson had just been hired as a substitute janitor within a week before the bankruptcy filing, and while he had not had any work yet, he anticipated getting $16.50 per hour for what work he would be given. That was expected to reduce his other income from "operation of a business." Mr. Mattson's businesses were not identified in the schedules, but the Court notes the case was filed as "f/d/b/a Robbyn D. Mattson Insurance" and "d/b/a East County Battery Doctors." Debtors' Statement of Financial Affairs Number 18 identifies prior businesses as "insurance sales" and "reconditioning/sales of automotive batteries." Schedule I further noted that Mr. Mattson also earned approximately $2,760 a year coaching sports but this income was excluded from Schedule I as it was just for two months of the year and would not be available during an average month.

MEMORANDUM DECISION ON MOTION TO MODIFY- 2

creditors getting paid under the plan were Debtors' attorney fees and unsecured creditors, who were expected to get 2% on their claims. Debtors' secured payments on their mortgage and one vehicle were being paid directly by Debtors. The Chapter 13 trustee recommended Debtors' plan for confirmation, and an Order Confirming the Chapter 13 Plan filed December 21, 2010 was entered on March 2, 2011 [dkt #13].

Just over two and a half months later, on May 24, 2011, Debtors filed the Amended Schedules I and J. On Amended Schedule I, Mr. Mattson was now listed as a "janitor" (rather than substitute) and the average monthly income for both Debtors had increased to a total of $5,936 per month. Ms. Mattson's income had gone up just over $400 a month, and Mr. Mattson's income had doubled, to over $2450 per month. The Amended Schedule J listed increased expenses of $4,906 per month, nearly $800 per month higher than the original schedule. While the Amended Schedule J no longer reflected business operation expenses of $288 per month, indicating Debtors' apparent abandonment of Mr. Mattson's previous business; expenses in nearly every other category increased. Some of the increases reflect potentially expected changes due to Mr. Mattson's increase to full time employment as a janitor (increases in transportation and clothing, for example). However, the Amended Schedule J also reflects increased expenses in other areas (for example, electricity and heating fuel for Debtors' home, home maintenance, food, medical and dental expenses, vehicle maintenance and licensing, and recreation and entertainment). In total, though, the Amended Schedule I and Schedule J show an overall increased monthly net income to $1,030 per month.

Approximately three weeks after the Amended Schedules were filed, or just over three months after the Plan had been confirmed, Debtors filed their Amended Plan and this Motion

MEMORANDUM DECISION ON MOTION TO MODIFY- 3

for modification on June 15, 2011. Under the Amended Plan and motion, Debtors' plan would be modified to provide for increased payments of $900 per month in June 2011 and then $1,000 per month beginning with the July 2011 payment. However, the Plan duration was proposed to be reduced to 36 months. The only creditors to be paid under the Amended Plan remain Debtors' attorney fees and unsecured creditors, who are to get an increased payout from at least $4,000 to at least $30,000.

## II.     The Arguments of the Parties

In their sparse motion to modify, Debtors make the somewhat confusing arguments that they are requesting a modification because they cannot afford to make the payments under the confirmed Plan, that §1328(a)(1) allows for modification at any time after confirmation to increase or reduce the amount of payments, and this modification is necessary because Debtors' income has increased. The modification is alleged to increase the distribution to unsecured claimants by over $26,000, and is necessary for Debtors' effective reorganization.

The Chapter 13 trustee objected to Debtors' motion, arguing that Debtors should be required to pay the increased $1,000 monthly payment but for the confirmed commitment period of 60 months. Under the originally filed means test, from which Debtors have only increased their income, Debtors had a positive monthly disposable income of $253 per month. Given the positive disposable income figure, the trustee argues, Debtors are not permitted under the Ninth Circuit's decision in *Maney v. Kaganveama (In re Kaganveama),* 541 F. 3d 868 (9th Cir. 2008), to seek a deviation from the 60 month commitment period and Debtors cited no authority in their motion that would allow them to do so. The fact that Debtors have increased their income and can potentially pay more does not justify a reduced plan term, the trustee argues; if they could make monthly payments for 60 months when making $10,000 less

MEMORANDUM DECISION ON MOTION TO MODIFY- 4

per year, there is no reason they cannot make payments for that long while making more. Lastly, the trustee contends that Congress clearly intended that above-median debtors propose and complete a 60 month plan.

Debtors' reply fleshes out their argument. At the time Debtors filed their case, Mr. Mattson was working as a substitute janitor and now Debtors have increased income, as detailed in their Amended Schedules. Their proposed modification increases the distribution to unsecured creditors from about $4,000 to roughly $30,000. They argue that after confirmation, notwithstanding that at confirmation the debtors were above median debtors and had a 60 month applicable commitment period, and that situation had not changed post-confirmation, a debtor is not bound to any applicable commitment period because those income based calculations of §1325(b) are not applicable in modifications under §1329, citing *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768 (B.A.P. 9th Cir. 2005). Their position is that as long as their proposed amended plan is filed in good faith and meets the other requirements of chapter 13 incorporated into § 1329, they may reduce the duration of the plan, without consideration of the applicable commitment period in the confirmed plan.

**III. Issue**

Under what circumstances may a debtor reduce the length of a confirmed plan by modification pursuant to 11 U.S.C. § 1329?

**IV. Legal Analysis**

Post-confirmation motions to modify in chapter 13 cases are governed by 11 U.S.C. § 1329. Section 1329(a) allows a debtor, trustee or the holder of an allowed unsecured claim to modify a plan to "(1) to increase or reduce the amount of payments on claims of a particular class provided for by the plan; [or] (2) to extend or reduce the time for such payments;…."

MEMORANDUM DECISION ON MOTION TO MODIFY- 5

Section 1329(b)(1) provides that "Section 1322(a), 1322(b) and 1323(c) of this title and the requirements of 1325(a) of this title apply to any modification" under 1329(a).

### A. The Good Faith Test for Plans Modifying the Amount or Duration of Payments

Though other courts have disagreed, the Ninth Circuit Bankruptcy Appellate Panel (BAP) has held that because 11 U.S.C. § 1325(b)(1)'s provisions, commonly referred to as the projected disposable income test, are not specifically referenced in § 1329(b)(1), the projected disposable income test does not apply to modification motions. *See Sunahara v. Burchard, supra* at 781-82; *see also Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538 (B.A.P. 9th Cir. 2007) (extending the *Sunahara* holding to post-BAPCPA cases); *contra In re Heideker*, --- B.R. ---, No. 9:08-bk-11910, 2011 WL 2432913 at *4-6 (Bankr. M.D. Fla. June 2, 2011) (holding that §1325(b)(1) is incorporated into §1329(b)(1) by §1325(a)(1)'s requirement that the plan "…complies with the provisions of this chapter…."). *Fridley* also held that debtors could not pay off the plan payments under their confirmed plan before the end of their applicable commitment period, without moving to modify the plan under §1329(a). *Fridley*, 380 B.R. at 545.

Although *Sunahara* concludes that the projected disposable income test of § 1325(b)(1) does not apply in § 1329 motions, it did not leave a wide open field for modifications to be approved. The debtor in *Sunahara*, very shortly after confirmation, sought to pay off the plan and obtain a discharge. The *Sunahara* court held that not only must the debtor file a motion to modify in order to pay off the plan early, but also held that the debtor's effort to pay off the plan shortly after confirmation had to be measured against the good faith requirement in §1325(a)(3). *Sunahara* gave an expansive definition to "good faith," concluding that it encompassed considerations of the debtor's "overall financial condition," such as

MEMORANDUM DECISION ON MOTION TO MODIFY- 6

> the debtor's current disposable income, the likelihood that the debtor's disposable income will significantly increase due to increased income or decreased expenses over the remaining term of the original plan, the proximity of time between confirmation of the original plan and the filing of the modification motion, and the risk of default over the remaining term of the plan versus certainty of immediate payment to creditors.

*Sunahara*, 326 B.R. at 781-82.

Cases in this Circuit have recognized that there are inherent problems with using the "good faith" standard as a catchall for considerations regarding the amount and length of payments to unsecured creditors. "To be sure, our reliance in *Sunahara* on the §1325(a)(3) good faith standard is vulnerable to criticism that it introduces a level of subjectivity that could lead to disparate results." *Fridley, supra* at 543 (citing *In re Keller*, 329 B.R. 697, 702-03 (Bankr. E. D. Cal. 2005)).

The problem with applying only the *Sunahara* test of "good faith" to determine whether to increase or reduce the amount or length of payment to unsecured creditors in an amended plan is presented in this case. Debtors came forward with amended schedules and an amended plan increasing their plan payment and payout to unsecured creditors based on their increased income. Of course, they also increased their expenses as well, so that net payout to creditors was not as high as if Debtors had maintained their initial budget. And while their overall payoff to creditors has increased from their initially confirmed plan, they seek to shorten the plan length by over 24 months, a difference of around $24,000 less than if the increased payments were made for the original 60 month plan period. So, while Debtors are increasing their payments and their payout in line with their increased income, there is clearly more that could – in "good faith" – be paid to their creditors. For a debtor, a trustee, a creditor or a court, a test dependent largely on a finding of good faith (using a contorted definition of good faith) is lacking in predictability. In a field where the volume of cases is substantial, a measurable,

MEMORANDUM DECISION ON MOTION TO MODIFY- 7

predictable test for crafting and reviewing plans is preferable. While this Court agrees with *Sunahara's* holding that § 1325(b)(1) is not incorporated into § 1329(b)(1), it also believes that a debtor must prove a change in the debtor's financial circumstances that justifies a modification of the plan, and that including the change of circumstances requirement provides a more objective, predictable test under § 1329.

**B. Correlating a Change of Circumstances With a Proposed Plan Modification**

There is no ruling in the Ninth Circuit at the circuit court level on the specific question of whether there is a requirement that the party seeking to modify a plan must prove a change in the debtor's circumstances before the confirmed plan may be modified under §1329. There is a conflict on the issue among other circuits and within dicta in this circuit. The Seventh Circuit has held that §1329 "does not require any threshold requirement for a modification...." *In re Witkowski*, 16 F.3d 739, 746 (7th Cir. 1994). In doing so, *Witkowski* disagreed with the holding of the Fourth Circuit in *In re Arnold*, 869 F.2d 240 (4th Cir. 1989). The *Arnold* court held that confirmation of a chapter 13 plan was res judicata, and the plan could not be modified unless a change in circumstances was demonstrated. *See Arnold*, 869 F.2d at 243. *Witkowski* rejected the res judicata argument, holding that res judicata does not apply where a contrary statutory purpose is evident. *See Witkowski*, 16 F. 3d at 754-46. The *Witkowski* decision finds, with very little analysis and citing only one Supreme Court case involving state and federal age discrimination statutory schemes, a "contrary statutory purpose" from the fact that § 1329 allows modification of plans and contains no precondition to modification, which "Congress could have specifically imposed…but did not do so." *Id.* at 745.

In *In re Anderson*, 21 F.3d 355 (9th Cir. 1994), the Ninth Circuit held that a court could not deny confirmation of a plan where a debtor refused to commit in advance to paying all

MEMORANDUM DECISION ON MOTION TO MODIFY- 8

future "actual" rather than "projected" disposable income.  In dicta, the court noted that a trustee can request modification under § 1329, but bears "the burden of showing a substantial change in the debtor's ability to pay since the plan was confirmed and that the prospect of that change had not already been taken into account at the time of confirmation."  *Id.* at 358 (*citing Arnold*).  *See also In re Heath*, 182 B.R. 557, 561 n.5 (9th Cir. BAP 1995) (citing *Anderson* and noting a trustee can request a modification if evidence regarding certain income is unavailable at confirmation but in "that circumstance, the trustee bears the burden of showing a substantial change in the debtor's ability to pay").

Subsequently, in *In re Powers*, 202 B.R. 618 (B.A.P. 9th Cir. 1996), the BAP distinguished *Anderson* and *Heath* as dicta, disagreed with *Arnold* and sided with *Witkowski*. In *Powers*, the chapter 13 trustee had filed a motion to increase the plan payments when she discovered that the debtor's income had increased 48%. The Court sustained the bankruptcy court order that the plan payments be increased, but declined to hold that the change of circumstances must be substantial and unanticipated. "The plain language of § 1329 simply does not support a change in circumstances as a prerequisite to modification."  *Id.* at 622.  The Court agreed with *Witkowski* that "…common law res judicata does not apply when a contrary statutory purpose is evident."  *Id.*  However, the *Powers* court did not cite what the evident statutory purpose was that precluded the application of res judicata. The argument that there is a contrary statutory intent, i.e., to allow modifications of confirmed plans with no requirement of a change of circumstances, seems to be simply a repetition of the argument that the plain statutory language does not require the change. *Powers* cites no other section of the Code or statutory history.

MEMORANDUM DECISION ON MOTION TO MODIFY- 9

*Powers* has been cited by a number of subsequent bankruptcy court decisions in this Circuit, which might argue that its holding with the *Sunahara/Fridley* good faith test has achieved acceptance. *See, e.g., In re Hall*, 442 B.R. 754 (Bankr. D. Idaho 2010). But the BAP has recognized that the issue remains an open question until the Ninth Circuit has spoken. *See Pak v. eCast Settlement Corp. (In re Pak),* 378 B.R. 257, 268 (B.A.P. 9th Cir. 2007) *overruled on other grounds* 541 F. 3d 868, 874 (9th Cir. 2008). The *Pak* opinion addressed the implications of calculating projected disposable income, and based its consideration in part on an interpretation that gave meaning to the provision for modifications under the Code. *Pak* noted that the *Powers* panel had followed the Seventh Circuit in rejecting the need for a substantial and unanticipated change, as required by the Fourth Circuit, but believed that while "the Ninth Circuit has not ruled on the preclusive effects of confirmed chapter 13 plans, dicta in *Anderson* suggest that at least in 1994, the Ninth Circuit was inclined to the Fourth Circuit view." *Pak*, 378 B.R. at 268.

The dicta in the recent Supreme Court case *Ransom v. FIA Card Services*, 131 S.Ct. 716, 178 L. Ed. 603 (2011), raises the issue again. In *Ransom*, the Supreme Court held that under 11 U.S.C. § 707(b)(2)(A)(ii)(I), to deduct an ownership expense for a vehicle for purposes of determining the debtor's disposable income under § 1325(b)(2)(A)(i), the debtor must actually have a loan or lease payment on the vehicle. Responding to the argument by the debtor that this holding causes an anomaly where the debtor only has one payment left at the time he or she files bankruptcy, the Court stated "[i]f car payments cease during the life of the plan, *just as if other financial circumstances change*, an unsecured creditor may move to modify the plan to increase the amount the debtor must repay. See 11 U.S.C. § 1329(a)(1)." *Id.* at 729 (emphasis added).

MEMORANDUM DECISION ON MOTION TO MODIFY- 10

Case 10-50455-BDL    Doc 34    Filed 08/26/11    Ent. 08/26/11 13:38:53    Pg. 10 of 15

This Court believes that the statements from *Ransom* and *Anderson* are persuasive and consistent with its own observation of Chapter 13 confirmation. The most thorough review of a debtor's circumstances, by creditors and in particular by chapter 13 trustees, takes place pre-confirmation. Schedules are reviewed in detail; pay advices, bank statements and tax returns are accumulated and compared in detail to the Schedules and the B22C form; debtors are questioned by the trustee's office at the Section 341 meeting and the plan is scrutinized. If there are problems with the plan or documents are missing, the trustee and, in some cases, creditors file objections, which if not resolved are argued to the Court. The plan determines the commitment period, the plan payment, the payout to creditors and the order of payments, in some cases the value of the collateral, the liquidation test under § 1325(a), the projected disposable income test and a host of other issues.

Modifications most often involve efforts to lower plan payments due to adverse changes in debtors' financial circumstances, and typically involve only one or two aspects of the debtor's plan. Rarely is the debtor subjected to examination again, and only limited documentation is requested by the trustee or any party in connection with most modification motions. Trustees usually only ask for updated Schedules I and J. A confirmed Chapter 13 plan has almost always received a far more thorough vetting than a modification motion. The notion that the length of a plan and the payout to unsecured creditors might be changed subject only to a generalized notion of "good faith" pays inadequate consideration to the plan confirmation process and the determinations inhering in the Court's order confirming a chapter 13 plan.

This Court holds, therefore, that in addition to the *Sunahara* good faith requirement, modification pursuant to § 1329 also requires that the moving party show that there has been a

substantial change in the debtor's circumstances since the time of confirmation which was unanticipated or otherwise could not be taken into account at the time of the confirmation hearing[2], <u>and that the change in the plan correlate to the change in circumstances</u>. In the extant case, while there have been changes in circumstances that were not taken into account in the original confirmed plan, those changes are an increase in Debtors' income and some increased expenses. Such changes do not correlate with a need to shorten the plan period. Debtors are not retiring, leaving the employment market or changing jobs in some other way; nor are they contending that they have some illness or other mitigating factor. Nor are they proposing some extra payment to creditors (such as payments from their exempt assets like the retirement fund) that are over and above their disposable income which might incentivize creditors or the trustee on their behalf to support a reduction in the length of a plan in return for a greater payout. In summary, while the increase in payment is appropriate given the change of circumstances, the reduction in the length of the plan is not, because it does not correlate with the change in circumstances.

### C. Reduction of the Time for Payments To Less Than The Applicable Commitment Period Under § 1329

Before enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA), section 1325(b)(1)(B), commonly referred to as the "best efforts test," required that a plan commit all of the debtor's projected disposable income for three years to "be applied to make payments under the plan," unless the plan proposed to pay the full amount of the unsecured claims. BAPCPA amended § 1325 substantially, including introducing the concept of "applicable commitment period" to replace the old notion of a three year commitment. The

---

[2] Some changes, such as in this case, are anticipated but sufficiently uncertain in terms of the effect on finances that the parties cannot craft a plan or modification until the change occurs.

MEMORANDUM DECISION ON MOTION TO MODIFY- 12

applicable commitment period for purposes of the best efforts test is three years for below-median income debtors, and five years for above-median income debtors.[3]

The Debtors in this case are above-median income debtors with positive disposable income and their confirmed plan provides for a five (5) year commitment period. Debtors argue that since § 1325(b) is not applicable to § 1329 motions, there is no applicable commitment period required when a plan is modified. The trustee argues the applicable commitment period is fixed at confirmation and the debtors are bound to that period unless they propose to pay their unsecured creditors in full.

Addressing Debtors' argument first, the contention that the applicable commitment period no longer "applies" to a modified plan is belied by § 1329(c) which specifically states that a plan "modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B)...." This suggests that the "applicable commitment period" does not go away in the modification, but is fixed at confirmation. The plan may be extended by the Court for good cause, though not beyond five years, but the applicable commitment period from § 1325(b) cannot be altered.

Does that mean, as the trustee suggests, that unless a debtor proposes to pay the unsecured claims in full, the length of the plan cannot be reduced under § 1329(a)(2)? While that is one way of reconciling § 1329(c) with § 1329(a)(2), in the Court's mind it is an unduly restrictive and inflexible view of § 1329(a)(2). A debtor's financial circumstances may change in a way that justifies a reduction in plan length. For example, in *In re Ewers*, 366 B.R. 139

---

[3] The Ninth Circuit in *In re Kaganveama*, 541 F. 3d 868 (9th Cir. 2008), has held that if an above-median debtor does not have a positive disposable income figure as calculated under § 1325(b)(2), then the debtor has no commitment period. While the debtor in this case had a positive disposable income, and the Court need not address that situation, to the extent that *Kaganveama*'s holding on this point still applies the length of the plan for § 1329 purposes would be the actual length of the confirmed plan where there is no "applicable commitment period."

MEMORANDUM DECISION ON MOTION TO MODIFY- 13

(Bankr. D. Nev. 2007), the debtors were retiring and their income was reducing.  In that setting, a debtor might request not only to reduce the plan payment, but also to pay off the plan early, perhaps using funds from an exempt source. Creditors, or a trustee acting on their behalf, may determine that it is better for creditors to avoid the risk of some future adverse change in circumstance, e.g., illness, and take the money now, even at some discounted amount.  Or, a debtor may be approaching the end of a plan, and need to refinance or sell a home to complete the plan, and offer early payoff in connection with the sale or refinance.

So what is the point of retaining the notion of an "applicable commitment period" under § 1329 if the time for payment can be reduced under § 1329(a)(2)? First, § 1329(c) serves to makes clear that modification does not allow the Court to keep a below-median debtor in a case for more than the original three years absent cause, and for any debtor the Court may not extend the period beyond five years under § 1329.  A fixed applicable commitment period also allows the parties and the Court to compare what the amended plan is proposing to distribute over a shorter period to creditors to what the debtors would have to pay creditors if they paid their disposable income over the applicable commitment period.

In the facts before the Court, given Debtors' increase in disposable income, an increase in plan payments going forward is proper. That increased payment over their originally confirmed applicable commitment period would result in approximately $24,000 more in distributions to the creditors than what Debtors are proposing with this modification. Of course, the trustee takes the risk that Debtors' income may go down (and it may go up further), but there is no evidence submitted that such an outcome is likely. Debtors offer no current or prospective change in circumstances to justify reducing the length of their plan payments, and the Court denies confirmation of the modified plan to the extent it seeks to reduce the length of

MEMORANDUM DECISION ON MOTION TO MODIFY- 14

payment period. Debtors' request to increase their plan payment amount is granted, to the extent they wish to continue with that part of their motion.

_____
Hon. Brian D. Lynch
United States Bankruptcy Judge

MEMORANDUM DECISION ON MOTION TO MODIFY- 15